# UNITED STATES DISTRICT COURT

for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.   MJ22-168 |
| Subject Premises 1: An RV bearing | ) |
| VIN#1GBKP37N7P3311042, more fully described in | ) |
| Attachment A | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
SEE ATTACHMENT A, ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B, ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. S 841 and 846 | Distributing, or Possessing with Intent to Distribute, a Controlled Substance |
| Title 18, U.S.C. S 922(g)(1) and 924(c)(1) | Unlawful Possession of a Firearm by a Prohibited Person and in Furtherance of a Drug Trafficking Crime |
| Title 26, U.S.C. S 5861 | Unlawful Possession of an Unregistered National Firearms Act (NFA) Firearm |

The application is based on these facts:

✓   See Affidavit of ATF SA Louis Montana

☐   Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_Louis M Montana_
*Applicant's signature*

Louis Montana, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____04/20/2022_____

_Judge's signature_

City and state:   Seattle, Washington

Brian A. Tsuchida, U.S. Magistrate Judge
*Printed name and title*

## **AFFIDAVIT IN SUPPORT FOR APPLICATION**

STATE OF WASHINGTON     )
                               )     ss
COUNTY OF SNOHOMISH     )

I, Louis B. Montana, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), in Seattle, Washington, having been duly sworn, state as follows:

## **AFFIANT BACKGROUND**

1.      I am a Special Agent (SA) with the United States Department of Justice (DOJ) Bureau of Alcohol Tobacco Firearms and Explosives (ATF) and have been so employed since August 30, 2020. I am currently assigned to ATF Group V in Seattle, Washington. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2.      I am a graduate of the Federal Law Enforcement Training Center, where I completed ATF Special Agent Basic Training and the Criminal Investigator Training Program. During this 27-week training, I received instruction relating to the investigation of firearm and explosives violations.  Prior to this employment, I obtained a Bachelor of Science degree in Fire, Arson, and Explosion Investigation, and a University Intelligence Certificate with a concentration in Science and Technology. I am a Certified Fire and Explosion Investigator and Vehicle Fire Investigator through the National Association of Fire Investigators. Prior to this employment, I served three (3) years as a Combat Engineer in the Kentucky Army National Guard. Throughout my career with the ATF, I have had training and experience investigating violent crimes against persons and crimes against the government.  Additionally, I have received training in the recognition, identification and testing of controlled substances as well as in common methods of trafficking in narcotics and firearms.

3.      As a result of my training and experience, I have an understanding of the manner in which narcotics are distributed and various roles played by individuals or groups involved in the distribution, along with the unlawful use of firearms during crimes of violence and/or drug trafficking and firearms trafficking.

4.      Through my training and experience, I have encountered and become familiar with various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to import, export, conceal and distribute controlled substances.  I am also familiar with the manner in which drug traffickers use telephones, often cellular telephones, to conduct their unlawful operations, and how they code their conversations to disguise their unlawful activities.

5.      I know from my training and experience that individuals involved in the trafficking of controlled substances often maintain possession and control of firearms in an attempt to protect themselves and their illegal trafficking enterprise (that is, both their drugs and drug proceeds). Furthermore, narcotics traffickers will utilize those firearms as a means to intimidate or ensure the loyalty of their associates and/or subordinates and to prevent those with intimate knowledge of the organization from disclosing information to law enforcement.

6.      The facts in this affidavit come from my own personal knowledge and observations; my training and experience; information obtained from other agents, a confidential informant (CI) and witnesses; review of documents and records related to this investigation; and communications with others who have personal knowledge of the events and circumstances described herein.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and pen-trap orders, and therefore does not set forth all of my knowledge about this matter.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe that DANE MICHAEL BRITTON has committed the offense of Distributing, or Possessing with Intent to Distribute, a Controlled Substance, in violation of Title 21, United States Code, Section 841 and 846, Unlawful Possession of a Firearm and Unlawful Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of Title 18, United States Code, Section

922 and 924 and Unlawful Possession of a National Firearms Act (NFA) Firearm in violation of Title 26 United States Code, section 26. There is also probable cause to believe that DANE MICHAEL BRITTON or associates are regularly trafficking narcotics from California in connection with criminal activities.

## PURPOSE OF THE AFFIDAVIT

8.      This affidavit is submitted in support of an application in support of an application for a search warrant, to search the property detailed below, further described in Attachment A, attached hereto and incorporated by these references as if set forth fully herein, for which I believe that there is probable cause that each location contains evidence of the aforementioned offenses. The evidence to be searched for and seized is more particularly described in Attachment B hereto, incorporated by this reference.

a.      **A RV bearing VIN#1GBKP37N7P3311042 located at 13102 25th Drive Southeast, Everett, Washington, 98208.**

## STATEMENT OF PROBABLE CAUSE

9.      The United States, including ATF, is conducting a criminal investigation of DANE MICHAEL BRITTON and others regarding possible violations of Title 21, United States Code, Section 841, and Title 18, United States Code, Section 922, and related crimes.

### Investigative Background

10.     On August 8, 2021, a confidential source of information (hereinafter, "CI[1]") provided information to ATF SA Louis Montana alleging the current criminal activities of "Dane," later identified as DANE MICHAEL BRITTON (DOB 12/23/1968). On October 8, 2021, information was received that BRITTON was actively "moving the fentanyl pills, heroin, and meth" and "has been known to traffic firearms." Based on my training and experience, I

---

[1] The CI has a state criminal history that includes misdemeanor arrests involving drug and firearm possession, theft, and a felon Domestic Violence conviction that occurred in 2017. The conviction was related to theft of property and was non-violent. The CI was financially compensated by law enforcement for their cooperation. The CI's information has been largely corroborated by independent police investigation, law enforcement databases and surveillance. Further, the CI has provided information that has led to the seizure of firearms and fentanyl in this investigation. I am not aware of the CI making false statements to investigators, and I have found their information to be credible and reliable.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

know that "fentanyl pills" refer to Counterfeit Oxycodone Hydrochloride fentanyl-laced M30 pills. The CI further advised that BRITTON is known to carry a firearm and that BRITTON is also selling and/or transporting firearms.

11.     A National Crime Information Center (NCIC) record's check on BRITTON reveals over sixty (60) arrests and included multiple felony arrests for manufacturing, dealing and possession of a controlled substance. In 2015, BRITTON also received felony firearm in possession conviction. More recently, in 2020, BRITTON was arrested for manufacturing with intent to deliver narcotics (methamphetamine) by Snohomish County Sheriff Department.

12.     The CI stated that BRITTON was seeking to sell twenty (20) pounds of marijuana, and that BRITTON could sell large quantities of Counterfeit Oxycodone Hydrochloride fentanyl-laced M30 pills. BRITTON also informed the CI that BRITTON or an associate travel to California every Tuesday to "re-up." Based on my training and experience, "re-up" refers to a resupply of a batch of drugs to be further distributed.

13.     The CI was shown a current, color Washington State Driver's License photograph of BRITTON and confirmed BRITTON's identity. The CI also provided BRITTON's phone number. The CI gave information that BRITTON is known to drive multiple vehicles including a white Nissan Altima with chrome rims, later identified as a white 2017 Nissan Altima SD, bearing Washington State License Plate BVV6736. Law enforcement investigators observed this 2017 Nissan Altima SD, bearing Washington State License Plate BVV6736 in a parking lot located within the cul-de-sac of a single-family residence located at 13102 25th Drive Southeast, Everett, Washington, 98208, and its surrounding property, grounds, and outer buildings (hereinafter Subject Premises 1, which was the subject of MJ22-158 issued on April 15, 2022, by

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 4
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the Honorable Magistrate Judge Michelle L. Peterson).[2] The CI also stated that BRITTON has "a few houses," but in a recent conversation with BRITTON, BRITTON stated he is currently residing at a residence "near 128th Street" and "the Lowe's" in Everett, Washington. This address was later identified as 13102 25th Drive Southeast, Everett, Washington 98208 (Subject Premises 1).

      14.    Throughout the course of this investigation, investigators observed BRITTON, as the sole occupant and driver of multiple vehicles that BRITTON parked in the driveway and additional parking lot of the subdivision, of his residence, to include;

      a.    A Black 2004 GMC Yukon bearing Washington license plate number BRT7506 (hereinafter **Subject Vehicle 1**).[3]

      b.    A Black 2007 Dodge Charger bearing Washington license plate number CDA7163 (hereinafter **Subject Vehicle 2**).[4]

      c.    A White 2017 Nissan Altima SD, bearing Washington State License Plate BVV6736 (hereinafter **Subject Vehicle 3**).

      d.    A White 2014 (estimated) Dodge 1500 bearing (hereinafter **Subject Vehicle 4**).

      e.    A Gold 2000 Mercedes-Benz 5004D bearing Washington license plate number BVV4209 (hereinafter **Subject Vehicle 5**).[5]

      f.    A Blue 1994 Chevy Caprice bearing Washington license plate number BVC7139 (hereinafter **Subject Vehicle 6**.)

      15.    Throughout this investigation, BRITTON has made multiple statements to the CI and the ATF UC referring to **Subject Vehicle 1, Subject Vehicle 2, and Subject Vehicle 6,**

---

[2] Additionally authorized locations by the search warrants issued by the Honorable Magistrate Judge Michelle L. Peterson on April 15, 2022, include: a storage unit #F8004 located at Everett Secure Self Storage (Subject Premises 2); a Black 2004 GMC Yukon bearing Washington license plate number BRT7506 (Subject Vehicle 1); a Black 2007 Dodge Charger bearing Washington license plate number CDA7163 (Subject Vehicle 2); a White 2017 Nissan Altima SD, bearing Washington State License Plate BVV6736 (Subject Vehicle 3); a White 2014 Dodge 2014 (estimated) Dodge 1500 bearing (Subject Vehicle 4); a Gold 2000 Mercedes-Benz 5004D bearing Washington license plate number BVV4209 (Subject Vehicle 5); and Blue 1994 Chevy Caprice bearing Washington license plate number BVC7139 (Subject Vehicle 6).

[3] A records check of this vehicle (2004 GMC Yukon: BRT7506) reveals it is registered to Dane BRITTON.
[4] A records check of this vehicle (2007 Dodge Charger: CDA7163) reveals it is registered to Dane BRITTON.
[5] A records check of this vehicle (2000 Mercedes-Benz 5004D: BVV4209) reveals it is registered to Dane BRITTON.

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 5
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

often referring to them as owned by BRITTON. BRITTON has been witnessed as the sole driver of these vehicles and is believed to have sole access to each. On March 25, 2022, investigators observed **Subject Vehicle 3** parked in the driveway of BRITTON's residence (**Subject Premises 1).** On April 3, 2022, investigators observed BRITTON access and operate **Subject Vehicle 2.** On April 4, 2022, investigators observed **Subject Vehicle 6** and **Subject Vehicle 2** parked in the driveway of **Subject Premises 1.** On April 4, 2022 BRITTON was observed accessing and operating **Subject Vehicle 4,** which displayed a temporary license plate in the rear windshield, despite attempts to fully identify the license plate, it was not able to be confirmed.

16.     A law enforcement records check indicated the most current address relating to BRITTON is located at 13102 25th Drive Southeast, Everett, Washington 98208 (the **Subject Premises 1**). Investigators have conducted extensive surveillance on BRITTON and determined BRITTON is residing at **Subject Premises 1.**

17.     In October 2021, ATF SA Montana interviewed a concerned citizen (hereinafter CC-1[6]), who lives in close proximity to BRITTON's residence **(Subject Premises 1)**. CC-1 stated he/she suspects BRITTON to be involved in illegal narcotics trafficking. CC-1 stated he/she originally suspected this because neighbors were complaining that BRITTON had constant "traffic" (i.e. people arriving at the residence and departing only a few minutes later) at the **Subject Premises 1**. CC-1 stated the "traffic" includes unfamiliar vehicles and individuals making brief stops at BRITTON's residence, and U-Haul moving trucks at "all hours of the day and night" which do not contain furniture, but rather large bags.

<u>Controlled Purchase of Fentanyl-laced Pills from BRITTON</u>

18.     On October 19, 2021, under the direction of ATF SA Montana, the CI arranged the purchase of approximately 1000 Counterfeit Oxycodone Hydrochloride fentanyl-laced M30 pills from BRITTON at **Subject Premises 1**. BRITTON confirmed the prices with the CI for the purchase as 1000 pills for $3,500, a rate of $3.50 per pill. BRITTON told the CI that 2000 pills

---

[6] CC-1 is gainfully employed and has no criminal record known to investigators.  CC-1 is cooperating with investigators to help 'clean up' his/her neighborhood.  CC-1 has provided information to investigators that has been proven true through independent police investigation, law enforcement databases and surveillance.  I am unaware of any false information provided to investigators by CC-1 and have found CC-1's information to be credible and reliable.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

would drop the price to $2.75 per pill. As a result, the CI arranged for an ATF undercover (UC) agent introduction and the purchase of 1000 pills on October 25, 2021, at the **Subject Premises 1**.

19.     On October 25, 2021, under the direction of ATF SAs, an operation was conducted during which an ATF UC Agent and the ATF CI purchased approximately one thousand (1000) suspected counterfeit Oxycodone Hydrochloride fentanyl-laced pills from BRITTON. Earlier in the day, SA Montana instructed the CI to contact BRITTON and confirm that the transaction would occur on the same day. BRITTON suggested to the CI that the purchase occur at BRITTON's residence (**Subject Premises 1**), which BRITTON provided to the CI as 13102 25th Drive Southeast, Everett, Washington 98208.

20.     Prior to the commencement of the operation, SA Montana and SA Catherine Cole searched the CI for contraband; none was found. SA Montana provided the ATF UC Agent with official ATF funds with which to purchase evidence. The CI entered the front passenger seat of an ATF UC vehicle. The ATF UC Agent was equipped with an audio transmitter and recording device in order to monitor and capture conversation during the transaction. SAs Montana and Cole followed the ATF UC vehicle to the planned meet location.

21.     The ATF UC vehicle, driven by the ATF UC Agent and with the CI in the passenger seat, arrived in front of BRITTON's residence (**Subject Premises 1**). The CI called BRITTON and stated that the CI was outside of the aforementioned address and instructed BRITTON to come outside to the ATF UC vehicle.

22.     BRITTON exited **Subject Premises 1** and entered the ATF UC vehicle with the ATF UC Agent and the CI. The ATF UC exchanged $3,500.00 of official agency funds for approximately 1000 suspected counterfeit Oxycodone Hydrochloride fentanyl-laced pills from BRITTON. BRITTON discussed pricing options and suggested lowering the price if more pills were purchased.  Throughout the course of the conversation, firearms were discussed, and BRITTON stated that he had "a bunch" of firearms, including a "Draco," "the mini-AK-47, I got the full-size," "two ARs," "Sig elite handgun" and, "even more than that."  BRITTON continued, "I probably got about 12 or 13 guns." BRITTON and the ATF UC discussed future

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 7
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

deals and possibly trading items for the ATF UC to install a hidden compartment in BRITTON's vehicle that BRITTON stated, he "could put AR's and stuff in". At the conclusion of the meeting, the CI asked BRITTON if the CI could share BRITTON's phone number for future deals, to which BRITTON agreed.

23.     BRITTON exited the ATF UC vehicle and went inside the **Subject Premises 1**. The ATF UC Agent and the CI departed the meet location to a predetermined de-brief location. The vehicle was followed by SAs Montana and Cole. Upon arrival, SAs Montana and Cole took receipt of the suspected controlled substance.[7] The ATF UC Agent confirmed that $3,500.00 of official ATF funds was exchanged for the suspected contraband.



*Figure 1 - Purchased Fentanyl-laced Pills from BRITTON*

BRITTON's Possession of Firearms

24.     On October 27, 2021, the CI contacted SA Montana and stated that BRITTON contacted the CI via BRITTON's current, active cell phone number: (206) 504-4498 and discussed firearms. The CI traveled to BRITTON's residence **(Subject Premises 1)** that evening

---

[7] On November 9, 2021, SA Montana received the results of the chemical lab analysis regarding the pills. The lab analysis identified the following substances within the pills: N-Phenyl-N-[1-(2-phenylethyl) -4-piperidinyl] propanamide (Fentanyl) (calc. as Hydrochloride), and Acetaminophen. Specifically, the lab determined that the pills contained approximately 1.7 mg of fentanyl per tablet. According to the DEA, 2mg of fentanyl is considered to be a lethal dose.

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 8
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and took photographs of multiple firearms present at the location. These photos depict at least four (4) objects with characteristics that are consistent with features of actual firearms. Based on my training and experience, the alleged firearms contained in the photographs resemble an "AR" variant rifle, "PC" ("Pistol Caliber") Carbine, and two (2) other unidentifiable firearms.

25.     The CI stated that BRITTON mentioned that BRITTON possesses additional firearms that were "locked up." BRITTON also stated BRITTON was "willing to part with all of them [for] $2000-2500 a piece or a better deal if we bought a couple." Additionally, the CI said that BRITTON had, "a couple of nice sig pistols 9mm," and mentioned BRITTON has connections, "across the border," and that BRITTON, "wanted to brag and show me his call log and all the calls to Mexico." BRITTON stated to the CI that BRITTON's partner went to California on Tuesday, October 26, 2021, to "re-up" and that they do this every Tuesday.

26.     Further investigation into the EXIF (Exchangeable Image Format) descriptive data from the photographs provided by the CI revealed that the location where the photos taken by the CI were geographically consistent with the location of **Subject Premises 1**. EXIF descriptive data (meta-data) in an image file is data that provides the date the photo was taken, resolution, shutter speed, focal length and other camera settings. The following images and screenshots reveal the basic meta data, including the location of where the photographs were captured:



**Basic Image Information**

Target file: HVWS1784.JPG

| | |
|---|---|
| Location: | Latitude/longitude: **47° 52' 44" North, 122° 11' 54" West** ( 47.878889, -122.198333 ) |
| | Map via embedded coordinates at: Google, Yahoo, WikiMapia, OpenStreetMap, Bing (also see the Google Maps pane below) |
| | Timezone guess from earthtools.org: 8 hours behind GMT |
| File: | **1,024 × 768** JPEG 324,748 bytes (317 kilobytes) |
| Color Encoding: | **WARNING:** No color-space metadata and no embedded color profile: **Windows and Mac web browsers treat colors randomly.** Images for the web are most widely viewable when in the sRGB color space and with an embedded color profile. See my Introduction to Digital-Image Color Spaces for more information. |

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 9
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Basic Image Information**

Target file:   LLUL8486.JPEG

| Location: | Latitude/longitude:   47° 52' 44" North,   122° 11' 54" West<br>( 47.878889, -122.198333 )<br><br>Map via embedded coordinates at: Google, Yahoo, WikiMapia, OpenStreetMap, Bing (also see the Google Maps pane below)<br><br>Timezone guess from earthtools.org: 8 hours behind GMT |
|---|---|
| File: | **900 × 1,200** JPEG (**1.1** megapixels)<br>755,276 bytes (738 kilobytes) |
| Color Encoding: | Embedded color profile: "sRGB" |



Main JPG image displayed here at 53% width (7% the area of the original)

**Basic Image Information**

Target file:   RMIG3256.JPG

| Location: | Latitude/longitude:   47° 52' 44" North,   122° 11' 54" West<br>( 47.878889, -122.198333 )<br><br>Map via embedded coordinates at: Google, Yahoo, WikiMapia, OpenStreetMap, Bing (also see the Google Maps pane below)<br><br>Timezone guess from earthtools.org: 8 hours behind GMT |
|---|---|
| File: | **768 × 1,024** JPEG<br>345,925 bytes (338 kilobytes) |
| Color Encoding: | **WARNING:** No color-space metadata and no embedded color profile: **Windows and Mac web browsers treat colors randomly**.<br><br>Images for the web are most widely viewable when in the sRGB color space and with an embedded color profile. See my Introduction to Digital-Image Color Spaces for more information. |



Extracted **120 × 160** 4.6-kilobyte "EXIF:ThumbnailImage" JPG Displayed here at 200% (10% the area of the original)

27.      Further review of the location data of the photographs indicates the following GPS (global positioning system) coordinates; 47°52'44.0"N 122°11'54.0"W. These coordinates correspond with the location of **Subject Premises 1**.

<u>Location Data Regarding Dane BRITTON's Cellular Telephone</u>

28.      On November 9, 2021, investigators received court authorization to receive cellular site location data.[8] Analysis of this GPS data between September 9, 2021, and November 9, 2021, revealed that BRITTON frequented **Subject Premises 1** on a daily and overnight basis (see figure)**,** and frequented **Subject Premises 2** on five (5) separate occasions during this time

---

[8] A cell phone's location, whether stationary or moving, can be tracked through cell site location information (CSLI) or global positioning system (GPS) data. CSLI, which is also referred to as cell phone location tracking, refers to information cell phones convey to nearby cell towers.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

period. The data also revealed that BRITTON frequented numerous casinos. Based on my training and experience, individuals who are involved in drug trafficking often attempt to conceal the proceeds of illicit drug sales by utilizing legitimate cash businesses to make their currency appear legal.



*Figure 2 - GPS Data from BRITTON's Cellular Phone at Subject Premises 1*

//

//

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 11
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



*Figure 3 - GPS Data from BRITTON's Cellular Phone at Subject Premises 2 (Everett Secure Storage)*

<u>Controlled Purchase of Firearms from BRITTON</u>

29.     On December 13, 2021, the CI stated that BRITTON changed phones and that BRITTON's new phone number was "206-739-2931." From my training and experience, individuals involved in illegal narcotics trafficking often change cell phones and cell phone numbers to thwart law enforcement investigations.  The CI also stated that BRITTON is acquiring additional firearms and actively trafficking narcotics.

30.     On February 26, 2022, the ATF UC contacted BRITTON and discussed meeting up to purchase firearms from BRITTON.

31.     On March 1, 2022, BRITTON texted the ATF UC from the phone number "206-739-2931" and told the ATF UC to "call me." The ATF UC contacted BRITTON via telephone, at 206-739-2931. BRITTON stated that BRITTON had "the us(ual). I got the blueberries, baby blueberries."  From my training and experience "blueberries" is in reference to counterfeit Oxycodone Hydrochloride fentanyl-laced pills, similar to the pills the ATF UC purchased from BRITTON in the past.

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 12
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32.     BRITTON then discussed selling firearms and explained how much money BRITTON would receive if BRITTON brought an "AR," referring to an AR-style firearm, to the south border.

33.     BRITTON and the ATF UC discussed the details of the transaction. The ATF UC stated, in sum, that he wanted to buy guns. BRITTON then explained specific firearms prices when trafficking them to California and the Southwest United States border. BRITTON stated the following to ATF UC:

> "If you're taking them down south, they go for a lot of fucking money." BRITTON continued, "I'm gonna run a quick line down to you to let you know what I know and you tell me if it's altered, wrong. 'Kay if, if I go all the way down across the border and, and, deliver to them, hand it to them, an AR is like six grand. Six thousand. Six racks for it. If I go all the way down to like San Diego and give them the, the, pieces, let them run with them across the border, I have to wait for my stuff and when I get it, it's four grand. But I wait, I have to wait for the stuff, I have to give them the pieces, they have to run across the border, they have to… you understand, get rid of them, get the stuff, come back, give me the money and the product. But if I want to get rid of them up here then it's roughly twenty-five hundred, you know what I'm saying, right around in there for an AR. And uh, I give it to them, I can either cash it out on the spot, or I can have them send it with them, whatever… pretty much cash it out on the spot. Twenty-five hundred, four grand, six grand, that's pretty much how it goes. Pay it out right here, wait on it at the two spots. That's about, and that's with multiple different people so that's about the right going price. Am I right on that? So, we're going to go with those numbers minus something for you to be able to get yours also. That's for me, making it easier on me, I just do this one deal and you do all the leg work."

34.     On March 15, 2022, the ATF UC contacted BRITTON via text at 206-739-2931, and discussed a date and time when BRITTON would be available to meet to sell firearms to the ATF UC. BRITTON agreed to meet the ATF UC the following day at BRITTON's residence (**Subject Premises 1).**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

35.     On March 16, 2022, the ATF UC contacted BRITTON via telephone at 206-739-2931 and confirmed the meeting. BRITTON eventually texted the ATF UC, BRITTON's address as "13102 25th Dr. SE, Everett, WA 98208" (**Subject Premises 1**)**.** ATF SA Montana provided the ATF UC with official ATF funds to purchase evidence (firearms). The ATF UC Agent was equipped with an audio transmitter and recording device in order to monitor and capture conversation during the transaction.

36.     An ATF UC vehicle, containing two (2) ATF UC Agents arrived at **Subject Premises 1**. The ATF UC contacted BRITTON via telephone and stated the ATF UC was outside **Subject Premises 1**. BRITTON stated that he would meet the ATF UC. BRITTON exited **Subject Premises 1,** approached the ATF UC vehicle and spoke with the ATF UC. BRITTON discussed firearms, methamphetamine, and fentanyl pills. The ATF UC told BRITTON that he only wanted firearms that day but asked BRITTON about his drugs. BRITTON quoted the ATF UC a price of $1,500.00 for a pound of methamphetamine, $16,000.00 for a kilogram of heroin, and $1.80 a pill for M30 fentanyl pills, and assured that the pills were of good quality. BRITTON then stated he can get 10,000-15,000 fentanyl pills at a time. BRITTON also expressed interest in having the ATF UC install a hidden compartment in BRITTON's truck (**Subject Vehicle 4**).[9] Shortly thereafter, BRITTON received a phone call, which he answered in Spanish, and then a red Jeep Cherokee, bearing Washington license plate BVA4040 arrived at **Subject Premises 1**. Law enforcement records reveal that this license plate is registered to Jose A. OSORIO HERNANDEZ, a Mexican national, with a narcotics arrest criminal history. BRITTON told the ATF UC to pull his vehicle behind **Subject Vehicle 4** and wait while BRITTON paid the unidentified individual from the red Jeep and then they would go to a storage unit for the firearms. BRITTON and the two (2) unidentified individuals from the red Jeep entered **Subject Premises 1.** Approximately sixteen (16) minutes later, BRITTON and the two (2) unidentified individuals exited **Subject Premises 1** and went their separate ways.[10]

---

[9] Investigators have observed BRITTON driving a white Dodge pick-up truck (**Subject Vehicle 4**) multiple times parked at **Subject Premises 1,** with BRITTON as the sole occupant throughout this investigation.
[10] From my training and experience, I know that drug traffickers routinely conduct brief transactions in a similar way; that is, a drug trafficker will make brief contact in or near a vehicle or residence, which obscures the casual observer from seeing any exchange of money or drugs.

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 14
USAO # 2021R01291

BRITTON instructed the ATF UC to follow him in his pickup truck (**Subject Vehicle 4**), to the storage unit.

37.     The ATF UC vehicle followed the **Subject Vehicle 4,** with BRITTON as the sole occupant, to Everett Secure Self Storage located at 11330 4th Avenue West, Everett, WA 98204, specifically Unit #F8004 **(Subject Premises 2)**, located on the north side of the storage facility. BRITTON entered the facility through a secured gate. One of the two ATF UC agents exited the ATF UC vehicle driver door and approached BRITTON'S vehicle, where they discussed a particular handgun that BRITTON had on his person. BRITTON handed the ATF UC a Springfield handgun and eventually stated that BRITTON is not willing to sell this particular firearm because he "is going to need this one." BRITTON explained to the ATF UC that BRITTON could sell that particular firearm for up to $3,500 if sold to "the Mexicans."

38.     BRITTON then exited **Subject Vehicle 4** and unlocked a secure, roll-up door to storage unit #F8004 **(Subject Premises 2)** and discussed installing hidden compartments in vehicles, narcotics, firearms and prices with the ATF UC. BRITTON explained to the ATF UC that he wanted two (2) hidden compartments in his Dodge pickup truck (**Subject Vehicle 4)** - one to hold a firearm where he could get to it quickly if needed, and another to store and traffic narcotics or firearms. BRITTON further explained to the ATF UC:

> *"Cause I don't like going around with one in the chamber and having it accessible, it's like, my kid or just anyone else I love, but when it' pops down (referring to the door of the hidden compartment) I want to have one in the chamber ready to rock. When I pull it, I'm gonna shoot, I'm gonna shoot it. You know what I mean? So, I don't want to, I don't want to be caught in that half a second. Yeah, that half a second is life or death."*

39.     Based on my training and experience, I know that individuals involved in the trafficking of controlled substances, often maintain possession and control of firearms in an attempt to protect themselves and their illegal controlled substances enterprises (that is, both their drugs and drug proceeds), therefore, the aforementioned statement made by BRITTON is indicative of such behavior.

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 15
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

40.     BRITTON then walked into the storage unit and discussed firearm parts and accessories, including scopes and lasers that could be included with the firearms. BRITTON then sold three firearms with accessories to the ATF UC for a total of $3,800. The ATF UC counted the recorded ATF official funds and completed the transaction. BRITTON then assisted the ATF UC with loading the firearms into the ATF UC vehicle. BRITTON did not want to sell the aforementioned Springfield handgun to the ATF UC, and BRITTON remained in possession of the firearm after this transaction. BRITTON then secured the storage unit and, and then as the sole occupant of **Subject Vehicle 4,** departed the storage facility. The ATF UC stated the specific storage unit where the transaction occurred was the third unit on the left-hand side of the nethermost row of units (**Subject Premises 2).**

41.     SA Montana and SA Cole followed the ATF UC vehicle to the pre-determined de-brief location, where SA Montana took receipt of the purchased firearms and accessories.[11]

42.     Shortly thereafter, SA Montana returned and conducted surveillance of BRITTON's residence **(Subject Premises 1)** and identified BRITTON's white Dodge truck **(Subject Vehicle 4)** parked outside his residence **(Subject Premises 1)**.



*Figure 4 - Smith & Wesson, semi-automatic rifle, Model M&P-15, 5.56mm, S/N: TT11322 (NFA Item)*

---

[11] The three firearms were later identified as: Smith & Wesson, semi-automatic rifle, Model M&P-15, 5.56mm, S/N: TT11322, Ruger, semi-automatic rifle, Model Mini-14, 5.56mm, S/N:584-21695, Ruger, semi-automatic rifle, pistol-caliber carbine, 9mm, S/N: 911-56060.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



*Figure 5 - Ruger, semi-automatic rifle, Model Mini-14, 5.56mm, S/N:584-21695 (Top), Ruger, semi-automatic rifle pistol-caliber carbine, 9mm, S/N: 911-56060*

43.     On March 18, 2022, ATF SA Catherine Cole, a certified Interstate Firearms and Ammunition Nexus Expert, who has been trained in the recognition of firearms and ammunition and their origin of manufacture, physically and visually examined the Smith & Wesson, Model M&P-15, 5.56mm caliber semi-automatic rifle, with Serial Number (S/N): TT11322, Ruger, Model Mini-14, 5.56mm caliber semi-automatic rifle, with S/N:584-21695, and the Ruger, Model PC Carbine, 9mm caliber semi-automatic rifle, with S/N: 911-56060. SA Cole determined that these firearms were not manufactured in the state of Washington.  Based upon her experience, knowledge and research, it is also SA Cole's opinion that the Smith & Wesson, Model M&P-15, 5.56mm caliber semi-automatic rifle, with S/N: TT11322, the Ruger, Model Mini-14, 5.56mm caliber semi-automatic rifle, with S/N:584-21695, and the Ruger, Model PC Carbine, 9mm caliber semi-automatic rifle, with S/N: 911-56060 meet the definition of a firearm under Title 18, United States Code, Section 921(a)(3). SA Cole also opined that, because the firearm was not manufactured in the State of Washington, they therefore must have traveled in, and thereby affected, interstate commerce if they were received or possessed in the State of Washington.

44.     Furthermore, The Smith & Wesson, Model M&P-15, 5.56mm caliber semi-automatic rifle, with Serial Number (S/N): TT11322, has a barrel length of 11 ¾" and also has a collapsible shoulder stock attached. This firearm is a Short-Barreled Rifle as defined in Title 26 U.S.C., Section 5845(a)(3).  Your affiant conducted a records check of the National Firearms

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 17
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Registration and Transfer Record (NFTRT) and confirmed that BRITTON has no National Firearms Act (NFA) weapons registered to him in the NFRTR.

45.     Furthermore, The Smith & Wesson, Model M&P-15, 5.56mm caliber semi-automatic rifle, with Serial Number (S/N): TT11322, has a barrel length of 11 ¾" and also has a collapsible shoulder stock attached. This firearm is a Short-Barreled Rifle as defined in Title 26 U.S.C., Section 5845(a)(3).  Your affiant conducted a records check of the National Firearms Registration and Transfer Record (NFTRT) and confirmed that BRITTON has no National Firearms Act (NFA) weapons registered to him in the NFRTR.

46.     Additionally, based on the description of the Springfield handgun BRITTON possessed during the firearms ATF UC-controlled purchase, SA Cole knows that "Springfield" refers to the firearms manufacturer "Springfield Armoy."  SA Cole knows that Springfield Armory does not manufacture any firearms in the state of Washington.

### March 2022 Correspondence from CC-1

47.     On March 23, 2022, CC-1 told investigators that he/she continues to see various vehicles make brief stops at **Subject Premises 1**, CC-1 also stated that many of the people who "come and go" from the house [**Subject Premises 1**] carry small bags or backpacks. Investigators have observed from my training and experience, individuals engaged in illegal drug trafficking make use various sized bags to obscure the casual observer from seeing any exchange of money or drugs.

### Subpoena Issued to Everett Secure Self Storage Facility (**Subject Premises 2**)

48.     On April 4, 2022, investigators served Everett Secure Self Storage with subpoena (Reference: 2021R01291-002) requesting the records associated with Unit #F8004. Everett Secure Self Storage provided a rental agreement, activity log, and the Washington State drivers license of the unit's lessee. These records show that the occupant/lessee of Unit #F8004 is Dane BRITTON, and the lease as current and active. The 2022 activity log regarding access to the storage facility shows that BRITTON accessed the facility on February 17, 2022, March 16, 2022 (date of UC firearm purchase from BRITTON), and on March 22, 2022.

//

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 18
USAO # 2021R01291

<u>April 2022 Correspondence from ATF UC</u>

49.     On April 11, 2022, the ATC UC recorded a text message conversation with BRITTON in the morning to include the following exchange:

> <u>UC:</u> *"Hey brotha. Ima head up ur way later this week and probably stay for at least a week. If u want me too i could bring my tools actuators amd switches and hook up ur truck?"*

> <u>Britton:</u> *"Yes. bring dat shit homie. you can stay a couple days it my spot. I have a spare room that you oh you and your girl could stay in."*

> <u>UC:</u> *"U still good with it for the blues? Also. If u still got the hookup who wants the pistolas i could bring u 3 of them"*

> <u>Britton:</u> *"do you gave a .38? that's one I promised them. they will want even hire if you bring em."* *"and yes on the blueberries"*

This conversation is referring to the ATF UC installing a hidden compartment in BRITTON's truck to conceal firearms and narcotics, as well as fentanyl pills (blueberries) as they discussed in the past.

<u>Search Warrant Execution for Subject Premises #1 & 2 and Subject Vehicle 1-6</u>

50.     On April 19, 2022, a team of agents and officers including Seattle Police Department, the Drug Enforcement Administration, and ATF executed a search warrant upon **Subject Premises 1 and 2 and Subject Vehicles 1-6**. Investigators recovered $7,000 in U.S. currency on BRITTON. Agents searched **Subject Vehicle 4,** which had been driven by Britton immediately prior to his arrest, and located the following: one semi-automatic pistol, a backpack containing approximately .75 pounds of methamphetamine, and other distribution amounts of various suspected narcotics. Notably, investigators observed BRITTON carrying the backpack containing .75 pounds of suspected methamphetamine multiple times in the past month. During a search of **Subject Vehicle 6**, investigators recovered assorted ammunition.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

51.     A search of BRITTON's residence (**Subject Premises 1**), investigators recovered the following evidence: two (2) semi-automatic pistols; assorted ammunition; a ballistic vest; various suspected narcotics including suspected fentanyl powder, suspected methamphetamine, suspected heroin, suspected fentanyl pills, suspected cocaine, and two (2) small bags with a large amount of U.S. currency. At BRITTON's storage unit (**Subject Premises 2**), investigators recovered three (3) shotguns, assorted ammunition, and various firearms accessories.

52.     Prior to the execution of the above described searches, at approximately 1630 hours Seattle Police Department Detective Miko Santiago observed BRITTON and an individual later identified as Ryan Shay enter an **RV bearing VIN#1GBKP37N7P3311042** parked on the street outside of a cul-de-sac approximately thirty feet from **Subject Premises 1**. Specifically, BRITTON was observed driving **Subject Vehicle 4** from **Subject Premises 1 (**approximately thirty feet) to the RV with Shay as a passenger, then BRITTON and Shay entered the **RV bearing VIN#1GBKP37N7P3311042** for approximately one minute before exiting and returning to **Subject Vehicle 4,** where investigators recovered a semi-automatic pistol, a backpack containing approximately .75 pounds of methamphetamine, and other distribution amounts of various suspected narcotics described in paragraph 50. An attempt to identify the registered owner of **RV bearing VIN#1GBKP37N7P3311042** was unsuccessful. During a subsequent interview of Ryan Shay, Shay informed investigators the **RV bearing VIN#1GBKP37N7P3311042** belonged to BRITTON.

53.     Officers observed the **RV bearing VIN#1GBKP37N7P3311042** parked at this location for two days prior to the execution of the search warrants on April 19, 2022. Investigators spoke with concerned neighbors of Subject Premises #1 about the RV and learned from the neighbors that **RV bearing VIN#1GBKP37N7P3311042** had been parked in the same location for approximately one week.  **RV bearing VIN#1GBKP37N7P3311042** is depicted below:

//

//

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 20
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970





AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 21
USAO # 2021R01291

**COMMON CHARACTERISTICS OF DRUG AND FIREARM TRAFFICKER**

54.     As a result of my training and experience and based on my consultation with other agents and law enforcement officers, I have an understanding of the manner in which narcotics are distributed and the various roles played by individuals and groups in their distribution.  I have encountered and have become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by various traffickers in their efforts to import, conceal, and distribute controlled substances.  I am also familiar with the manner in which drug traffickers use telephones, often cellular telephones, to conduct their unlawful operations.  I am also familiar with the manner in which drug traffickers will use weapons to protect their drug activities and further its goals.

55.     Based upon my training, experience, and conversations with other experienced officers and agents, I know that:

A.     Drug trafficking conspiracies usually take place over several months or years and continue to operate even when enforcement activity results in arrests and/or seizures of drugs and/or money.

B.     Persons involved in the distribution of controlled substances typically will obtain and distribute drugs on a regular basis, much as a distributor of a legal commodity would purchase stock for sale.  Similarly, such drug dealers will maintain an "inventory," which will fluctuate in size depending upon the demand for and the available supply of the product.

C.     Those involved in the distribution of illicit drugs often communicate by telephone in connection with their illegal activities in order to set up meetings with coconspirators, conduct drug transactions, or to arrange for the transportation drugs or drug proceeds.

D.     Drug traffickers routinely change telephone numbers in an attempt to thwart law enforcement.  When certain members of a drug trafficking organization change their telephone numbers, they typically call other members to alert them of the

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 22
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

telephone number change.  Drug traffickers also regularly subscribe telephone numbers to names and addresses other than their own, to conceal the true user of the telephone.

E.      Those involved in the distribution of illicit drugs often travel by car in connection with their illegal activities in order to meet with coconspirators, conduct drug and firearms transactions, or to transport drugs and firearms or drug and firearm proceeds.

F.      During the execution of search warrants at the residence of drug dealers, it is common to find papers, letters, billings, documents, and other writings, which show ownership, dominion and control of vehicles, residences, and/or storage units.

G.      It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their vehicles, residences, and/or storage units for their ready access and to conceal these items from law enforcement authorities.

H.      Narcotics traffickers often maintain books, records, receipts, notes, ledges, airline tickets, money orders, and other papers relating to the transportation, ordering, sale, and distribution of controlled substances.

I.      Persons involved in drug trafficking often conceal I their residences caches of drugs, large amounts of currency, financial instruments, as well as evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sims of money made from engaging in narcotics trafficking activities.

J.      Illicit drugs are frequently transported into the United States from Mexico and other countries, and between cities within the United States in bulk, high-purity form, and drug traffickers attempt to mask the distinct odors of particular drugs during such transport through the use of heat sealing and/or canning devices and/or aromatic substances such as laundry soap, dryer sheets, air fresheners, or axle grease.  Likewise, money is similarly transported in bulk.  It is common for drug traffickers to maintain hidden compartments within passenger vehicles, items altered for the purpose of hiding or concealing drugs, and items purchased and converted for the use of storing their drugs.

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 23
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

K.      Furthermore, I know that it is common for drug traffickers to secret drugs, currency and other valuable items representing the proceeds of drug sales within their residences and/or vehicles in order to prevent the theft of such items by other persons or the seizure of such items by law enforcement.  These secure locations typically include other residences also known as "stash houses," storage lockers, safes, portable safes, vaults, or other locked containers (sometimes requiring passwords or codes to open), as well as specially constructed concealed compartments such as those often found in "load cars" used specifically to facilitate drug trafficking.

L.      Drug traffickers commonly have in their possession, on their persons, and at their residences, and/or their vehicles and storage units, firearms and other weapons which are used to protect and secure a drug trafficker's property. Such property may include, but is not limited to, controlled substances, paraphernalia for the use or sale of controlled substances, books, records, jewelry, and United States currency.

56.      Evidence of drug trafficking, such as the items described above, is likely to be found in the **RV bearing VIN#1GBKP37N7P3311042** in light of the evidence seized from BRITTON's other locations authorized by the search warrants executed on April 19, 2022. Specifically, from **Subject Premises #1**: two (2) semi-automatic pistols; assorted ammunition; a ballistic vest; various suspected narcotics including suspected fentanyl powder, suspected methamphetamine, suspected heroin, suspected fentanyl pills, suspected cocaine, and two (2) small bags with a large amount of U.S. currency.  And from **Subject Premises #2:** three (3) shotguns, assorted ammunition, and various firearms accessories and **Subject Vehicle 4**: one semi-automatic pistol, a backpack containing approximately .75 pounds of methamphetamine, and other distribution amounts of various suspected narcotics. BRITTON's brief visit to the **RV bearing VIN#1GBKP37N7P3311042** just prior to his arrest provides additional grounds to believe probable cause exists to search the **RV bearing VIN#1GBKP37N7P3311042** as it is likely being used as a location to store narcotics, items associated with the trafficking of narcotics, firearms, ammunition, and firearms accessories.

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **CONCLUSION**

Based on the foregoing, I respectfully submit that there is probable cause to believe that the evidence of the crimes of Distributing, or Possessing with Intent to Distribute, a Controlled Substance, in violation of Title 21, United States Code, Section 841 and 846, Unlawful Possession of a Firearm by a Prohibited Person, in violation of  18 United states Code, Section 922(g)(1), Unlawful possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of Title 18, United States Code, Section 924(c)(1), and Unlawful Possession of an Unregistered National Firearms Act (NFA) Firearm, in violation of Title 26 United States Code, section 5861, as more particularly described in Attachment B hereto, can be found at the **RV bearing VIN#1GBKP37N7P3311042** located at 13102 25th Drive Southeast, Everett, Washington, 98208, as more particularly described in Attachment A hereto.


_____
Louis B. Montana, Affiant
Special Agent, ATF


The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on the 20th day of April, 2022.


_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT LOUIS MONTANA -- PAGE 25
USAO # 2021R01291

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A**

**Premises to Be Searched**

The RV parked on the street bearing VIN #1GBKP37N7P3311042 to be searched is described as follows, 13102 25th Drive Southeast, Everett, Washington, 98208.





**ATTACHMENT B**

List of Items to be Searched for and Seized

1. **Controlled Substances:** Including but not limited to cocaine, cocaine base in the form of crack cocaine, heroin, oxycodone and/or other diverted prescription drugs, and methamphetamine.

2. **Drug Paraphernalia:** Items used, or to be used, to store, process, package, use, and/or distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items.

3. **Drug Transaction Records:** Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances, including such records stored in electronic format.

4. **Customer and Supplier Information:** Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items, including such records stored in electronic format.

5. **Cash and Financial Records:** Currency and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; other records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, and similar items, including such records stored in electronic format; and money counters.

6. **Photographs/Surveillance:** Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices, and similar items, depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances, including such records stored in electronic format.

7. **Weapons:** Firearms, magazines, ammunition, and body armor, and other weapons-related items such as holsters and equipment to clean firearms.

8. **Codes:** Evidence of codes used in the distribution of controlled substances, including but not limited to passwords, code books, cypher or decryption keys, and similar information.

9. **Property Records:** Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other property owned or rented.

10. **Indicia of Occupancy**, residency, and/or ownership of assets including, but not limited to, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents.

11. **Evidence of Storage Unit Rental or Access:** rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords, or other documents relating to storage units.

12. **Evidence of Personal Property Ownership:** Registration information, ownership documents, or other evidence of ownership of personal property including, but not limited to, vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and other personal property; evidence of international or domestic travel, hotel/motel stays; and any other evidence of unexplained wealth.

13. **Individual and business financial books**, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

    a. Employment records: paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates and compensation to officers.
    b. Savings accounts: statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.
    c. Checking accounts: statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.
    d. Loan Accounts: financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.
    e. Collection accounts: statements and other records.
    f. Certificates of deposit: applications, purchase documents, and statements of accounts.
    g. Credit card accounts: credit cards, monthly statements, and receipts of use.
    h. Receipts and records related to gambling wins and losses, or any other contest winnings.
    i. Insurance: policies, statements, bills, and claim-related documents.
    j. Financial records: profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

14. All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

15.   All Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash. These documents are to include applications, payment records, money orders, frequent customer cards, etc.

16.   Negotiable instruments, jewelry, precious metals, financial instruments, and other negotiable instruments.

17.   Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

18.   Correspondence, papers, records, and any other items showing employment or lack of employment.

19.   Telephone books and/or address books, any papers reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

20.   Safes and locked storage containers, and the contents thereof that are otherwise described in this document.

21.   Tools: Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close or conceal said compartments.

22.   Cell Phones: Cellular telephones and other communications devices including smartphones (i.e., iPhones, Android phones, Blackberries, and the like) may be seized, if directly linked to BRITTON and will be the subject of an Application for a subsequent Search Warrant.